(No. 4151

LEE CONNAWAY, Claimant, *vs.* STATE OF ILLINOIS, *Respondent.*

*Opinion filed September 23, 1949.*

FRANK H. WALKER, Attorney for Claimant.

IVAN A. ELLIOTT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

Delaney, J.

Claimant, Lee Connaway, was employed on June 10, 1948, by respondent as a laborer with the Department of Conservation at the State Game Farm at Mt. Vernon, Illinois. Mr. Connaway was doing work assigned to him by his superior and was in the process of cutting a piece of wood on an electric saw when he suffered the loss of a portion of his thumb that was cut off by the blade of the saw.

No jurisdictional question is raised. Respondent and claimant were operating under the Workmen's Compensation Act, and the accident in question arose out of and in the course of the employment.

Claimant testified that he was first attended by Dr. Thompson in Mt. Vernon, and Dr. Thompson dressed the thumb every day. A short time later claimant went to Dr. Fairshter of Mt. Vernon because his thumb continued to pain, and Dr. Fairshter amputated it to the middle joint with a rounding off of part of the phalanx. The thumb became infected, and this infection was eventually cured. Claimant submitted to an examination by Dr. A. W. Modert at the Jefferson Memorial Hospital. Dr. Modert testified before the Commissioner of this Court at a hearing as follows:

> Q. "With respect to Mr. Connaway's left hand, thumb and arm, what did you find.
> A. "Well, on examination the left thumb has been amputated at the middle joint with a rounding off of part of the phalanx—proximal—of the left thumb, the distal end to make it clear. It is the distal end of the phalanx, and on examination there has been a great amount of atrophy of the remaining part of the thumb. Over the end of the thumb where the amputation

was it is very fixed and a scar tissue that binds the end of the thumb to the bone at several points, nerves, tender spots on the end of the thumb. There is also very noticed atrophy between the base of the left thumb and the forefinger on the left hand. These are the thenar muscles. The base of the thumb is practically fixed. In other words there is no motion at the base or limited. However, you are able to move it some. There is considerable restriction to the movement of the left forefinger in the middle joint and at the base of the left forefinger. There is some loss of motion in the third, fourth and fifth fingers of the left hand; considerable restriction in the palm and surface of the left hand. There is considerable loss of flexibility of the left wrist. However the dorsal extension is about normal, very little change noticed in the left elbow. The left shoulder on lateral extension of the arm actively is unable to extend the arm over 45 degrees due to the restriction in the shoulder. Passively not able to raise the arm under pressure, and you see that the shoulder blade is moving rather than the bone. The left girdle shoulder muscles are slightly atrophied as compared with the right. Forward and backward motions of the left arm at the shoulder are slightly restricted, but then nothing to compare with the lateral elevation of the left arm at the shoulder; the whole picture as I see it represents that there must have been a rather terrific infection in the left thumb itself. I think that covers it.

Q. Now Doctor on this infected thumb, in your opinion does the injury to the hand and the rest of the arm, could that be a direct cause of the infected thumb.

A. "Yes, it generally is. I didn't see the infection and don't know the extent of it, but they will cause a restricted shoulder and wrist and atrophy of the muscles and so on.

Q. "Would you recommend or prescribe any treatment.

A. "Nothing except the thumb, if it gives too much pain it should be reamputated and the nerves treated as treated for an amputation and more padding put over the end of the bone. That all depends upon how much is evidenced. He does have trouble, but I wouldn't recommend it unless the patient says it is giving so much trouble, then it should be done. The shoulder should be worked on. It is becoming fixed and will gradually increase. That will happen after lots of infection.

Q. "What per cent of use of the hand and arm would you say he has now.

A. "That is very difficult to say—of course as far as the thumb, he has very little use of the thumb, possibly a good 20% loss of the left forefinger.

Q. "What per cent of the thumb.

A.  "The way the thumb is now, 100% in the thumb unless something is done with it, and the left hand is about 25% at least of the left hand. Now as to the shoulder, you are running into a different proposition. I would say all of this is due to the injury. You have about 33⅓% loss of use of the left arm.

Q.  "What would you say the ultimate per cent of loss of use the arm and shoulder will be if something isn't done.
A.  "It shouldn't exceed 50%.

Q.  "A total of 50% is as far as it would ever be.
A.  "Yes."

The evidence discloses that claimant sustained a permanent partial loss of use of his left arm. The medical testimony on behalf of claimant that the ultimate per cent of loss of use of the left arm will not exceed 50% is not impeached and stands without contradiction. Due to the fact that the thumb, left forefinger and left hand are all considered integral parts of the left arm, the value of the compensation rate is computed on a basis of injury to the left arm.

Claimant's annual average wage was $2,100.00, making his legal compensation $40.38. His compensation rate, would therefore be the maximum of $15.00; since the injury occurred subsequent to July 1, 1947, this must be increased 30%, making a compensation rate of $19.50 per week. Claimant is thus entitled to an award of 112½ weeks at $19.50 per week, or $2,193.75. Claimant, however, was paid his regular wage of $40.38 per week during a period of forty-five days for non-productive time in the amount of $259.58. This sum must be deducted from his award.

An award is therefore entered in favor of claimant, Lee Connaway, in the sum of $1,934.17, payable as follows:

$1,046.92, which has accrued and is payable forthwith.
$ 887.25, payable in 45 weekly installments of $19.50 beginning September 30, 1949, with a final payment of $9.75.

as provided under the provisions of Section 8 (e) of the Workmen's Compensation Act, as amended.

Ruth R. Clark, Court Reporter, was employed to take the transcript of the testimony for which she made a charge of $26.39. We find that this charge is fair, reasonable and customary.

An award is, therefore, entered in favor of Ruth R. Clark in the sum of $26.39, payable forthwith.

This award is subject to the approval of the Governor as provided in Section 3 of "An Act concerning the payment of compensation awards to State employees."